UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| RICHARD LEE TORRES, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. G-10-116 |
| | § | |
| GERVAISE S. SUMMERS, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER OF DISMISSAL

Richard Lee Torres (TDCJ # 495122), an inmate in custody of the Texas Department of Criminal Justice-Correctional Institutions Division (TDCJ-CID), has filed a complaint under 42 U.S.C. § 1983, alleging a failure to protect by Defendants Gervaise Summers, Craig Christiansen, David Madjemite, and Robert Ramirez. Torres originally filed suit in state court, but after amending his complaint to proceed against the defendants in their individual capacities only, and only for violations of his civil rights, the defendants removed the suit to this court. The defendants have moved for summary judgment (Doc. No. 27); the plaintiff has not filed a response. Based on the pleadings, the motions, the summary judgment record and the applicable law, this court will grant the defendants' motion for summary judgment. The reasons for this ruling are stated below.

## I. Background

### A. Plaintiff's Allegations

Torres alleges that the defendants were deliberately indifferent to his safety when they failed to protect him from assault by another inmate. On July 13, 2009, Torres and two inmate co-workers were working in the 1 and 3-row side holdover of administrative segregation (ad-seg) with the door closed, while Officer Madjemite escorted inmate Clark to the lobby where officer

Christiansen was waiting for him. Suddenly, without provocation or warning, inmate Clark pushed open the door of 1 and 3-row, where, just inside the door, Torres was sitting. Clark rushed in and began assaulting Torres, striking him repeatedly on the right side of his face. Torres suffered facial lacerations that required approximately 25 sutures.

Torres alleges that inmate Clark's actions were directly caused by Defendant Summer's failure to lock the door on 1 and 3-row side holdover "as required by policy," and by Defendants Madjemite and Christiansen's failure to properly escort Clark to the lobby. He also alleges that Lt. Ramirez failed to protect him by assigning untrained officers to a high security area. He claims his injuries were the result of "gross negligence, gross indifference and reckless disregard" by all defendants.

**B.    The Summary Judgment Evidence**

In support of their motion for summary judgment, the defendants have filed the following evidence:

Exhibit A:    Relevant portions of Emergency Action Center Incident Report # 111256-07-09 involving inmate Torres.

Exhibit B:    Relevant portions of Major Use of Force Report # MA-03593-07-09.

Exhibit C:    Relevant medical records for Plaintiff Richard Torres.

Exhibit D:    Affidavit of Defendant Gervaise Summers.

The Emergency Action Center Incident Report (Exh. A), dated July 13, 2009, states:

On July 13, 2009, at approximately 10:05 a.m. in Administrative Segregation, Officer Madjemite was escorting Offender Clark, four (4) row, to a medical appointment. Officer Gervaise Summers placed the janitor, Offender Richard Torres, behind the door leading from the desk area to one (1) row. Officer Summers failed to lock and secure the door and at this time Offender Clark ran away from the escorting officer and assaulted Offender Torres. All staff in the area witnessing the assault stated that the offender did not use a weapon

during the assault. A supervisor, additional staff, and a video camera were called for. Officer Summers ordered Offender Clark to stop the assault and he failed to comply. Sgt. Christiansen responded to the area and separated the two offenders. Additional staff responded to the area and Offender Torres was removed from the area and escorted to the unit infirmary by Lt. Hunt. Offender Clark was secured in a holding cage in the segregation area.

Both offenders were evaluated by medical personnel. Offender Clark did not receive any injuries as a result of the physical altercation. Offender Torres was noted with a nine (9) cm. laceration above his right eye, a four (4) cm. superficial laceration under his right eye, a fourteen (14) cm. long superficial scratch on top of his head and a four (4) cm. superficial scratch on the back of his neck. Offender Torres received sutures to close the lacerations above and below his eye. Offender Clark was charged with a Level 1 Code 2.3 Assaulting and Offender without a Weapon. It was determined that Officer Summers' failure to lock and secure Offender Torres behind the door allowed for the assault to take place.

The report also states that disciplinary action was taken against Officer Summers for failure to follow proper procedures, that the Warden made the staff aware of the importance of securing doors in the ad-seg department, and that he implemented additional training in this area.

Defendant Summers states in her affidavit (Doc. No. 27, Exh. D) that it was her responsibility to lock the door leading to ad-seg, but that she did not have, nor could she locate, the key to the door. She was unaware of any pre-existing animosity between inmate Clark and Torres, nor did she know of, or have reason to believe, that Torres' safety was in jeopardy. Summers further notes that her experience working in ad-seg began two days prior to the incident, and she was still undergoing training when the incident occurred.

The TDCJ Use of Force Report and the Incident Summary (Doc. No. 27, Exh. B) reveal that Officer Madjemite was escorting Clark to the infirmary when Clark ran from him and gained access to the sally port area of ad-seg via the unlocked door. Officer Christiansen, a supervisor who was in the ad-seg area at the time, responded to Summer's call for help and separated Clark

and Torres.   Lt. Ramirez narrated the videotaping that began after Clark and Torres were separated, and he "terminated the use of force at 10:37 a.m."  *Id.*  There is no summary judgment evidence to suggest that Lt. Ramirez was responsible for staffing in the area where the incident occurred, as alleged.

## II.   <u>The Legal Standard on Summary Judgment</u>

The defendants' motion for summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure.  Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.  *Chelates Corp. v. Citrate*, 477 U.S. 317, 322 (1986).  The moving party has the burden of showing that summary judgment is appropriate.  *See Marco Ltd. Partnership v. Walloons, Inc.,* 588 F.3d 864, 871 (5th Cir. 2009) (citing *Chelates*, 477 U.S. at 323).  Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c)(2); *Chelates Corp.,* 477 U.S. at 322-23.

If the moving party meets its initial burden, "[t]he nonmoving party 'must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim.'"  *Peterson v. City of Fort Worth, Tex.,* 588 F.3d 838, 844 (5th Cir. 2009) (quotation omitted).  The non-movant must do more than simply show that there is some "metaphysical doubt" as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 478 U.S. 574, 587 (1986).  "A fact is material only if its resolution would affect the outcome of the action, ... and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to

return a verdict for the nonmoving party.'" *Wiley v. State Farm Fire and Cas. Co.,* 585 F.3d 206, 210 (5th Cir. 2009).

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co.,* 478 U.S. at 587-88.  However, factual controversies are resolved in favor of the non-movant "only 'when both parties have submitted evidence of contradictory facts.'" *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004).  The nonmovant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *Diamond Offshore Co. v. A & B Builders, Inc.,* 302 F.3d 531, 545 n. 13 (5th Cir. 2002). Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.,* 530 F.3d 395, 399 (5th Cir. 2008).  Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *American Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l.* 343 F.3d 401, 405 (5th Cir. 2003).

## III.    The Claims Against the Defendants in Their Individual Capacities

The Defendants assert that they are entitled to qualified immunity as a matter of law because Torres failed to allege a constitutional violation.

To determine whether a public official is entitled to qualified immunity for an alleged constitutional violation, reviewing courts typically conduct a two-prong analysis that was established in *Saucier v. Katz*, 533 U.S. 194 (2001), *overruled in part by Pearson*, 525 U.S.223, 129 S.Ct. 808, 817 (2009).  The first prong of the *Saucier* analysis asks whether, taken in the light most favorable to the party asserting the injury, the facts alleged show that the official's conduct violated a constitutional right. *See Scott v. Harris*, 550 U.S. 372 (2007) (citing *Saucier*,

533 U.S. at 201).  "If, and only if, the court finds a violation of a constitutional right, 'the next, sequential step is to ask whether the right was clearly established ... in light of the specific context of the case.'" *Id*. (quoting *Saucier*, 533 U.S. at 201).  If there is evidence to support the violation of a constitutional right, the second prong of the *Saucier* analysis asks whether qualified immunity is appropriate, nevertheless, because the defendant's actions were objectively reasonable "in light of clearly established law at the time of the conduct in question."  *Hampton Co. Nat'l Sur., L.L.C. v. Tunica County, Miss.,* 543 F.3d 221, 225 (5th Cir. 2008) (quoting *Freeman v. Gore*, 483 F.3d 404, 410-11 (5th Cir. 2007)).

The Supreme Court has recently clarified that the two-prong protocol established in *Saucier*, while often appropriate, is no longer mandatory for resolving all qualified immunity claims.  *Pearson*, 129 S.Ct. at 818.  Reviewing courts are permitted "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Id*.  Thus, the "rigid *Saucier* procedure" need not be followed in any particular sequence.  *Id*.  In this case, the Court finds it appropriate to determine initially whether a constitutional violation occurred under the traditional two-step procedure established in *Saucier*.

In the case of a qualified immunity defense, the usual summary judgment burden of proof is altered.  *See Gates v. Texas Dep't of Protective and Regulatory Servs.,* 537 F.3d 404, 419 (5th Cir. 2008).  An official need only plead his good faith, which then shifts the burden to the plaintiff, who must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law.  *See Mitchalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005) (citing *Brazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001)).  The plaintiff bears the burden of negating the defense and cannot rest on conclusory allegations and assertions, but

6

must demonstrate genuine issues of material fact regarding the reasonableness of the official's conduct. *Mitchalik*, 422 F.3d at 262; *see also Ontiveros v. City of Rosenberg, Tex.,* 564 F.3d 379, 382 (5th Cir. 2009) (noting that, to avoid summary judgment on qualified immunity, a plaintiff need not present "absolute proof, but must offer more than "mere allegations.") (quotation omitted).

## IV.   The Failure to Protect Claim

The Eighth Amendment proscription against cruel and unusual punishment requires prison officials to protect inmates from violent attacks by other inmates. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). However, not every injury "suffered by one prisoner at the hands of another ... translates into constitutional liability for prison officials responsible for the victim's safety. *Id.* at 834. In order for prison officials to be held liable under the Eighth Amendment for deliberate indifference to an inmate's health or safety, including protecting him from harm by another inmate, a plaintiff must prove that the official knew of and disregarded an excessive risk to inmate health or safety; was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and also drew the inference; and failed to take reasonable remedial action. *Id.* at 842-45. Liability for an Eighth Amendment deprivation requires the same delinquency in denial of protection against harm from other inmates as it does for denial of medical care, *Johnson v. Lucas,* 786 F.2d 1254, 1259 (5th Cir. 1986); thus, there must be an allegation of facts which will support deliberate indifference on the part of officials. *Wilson v. Seiter*, 510 U.S. 294 (1991). "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as infliction of punishment." *Farmer,* 511 U.S. at 826. Furthermore, the mere negligent failure to protect a prisoner from assault does not comprise a constitutional violation

unless it becomes pervasive.  *See Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986); *Oliver v. Colins*, 914 F.2d 56, 60 (5th Cir. 1990).

Torres' allegations and the uncontested summary judgment facts, viewed in the light most favorable to the plaintiff, do not support a claim that any prison official was deliberately indifferent to Torres' safety.   Prisons, by definition," are composed of persons with "a demonstrated proclivity for antisocial criminal, and often violent, conduct." *Hudson v. Palmer*, 468 U.S. 517, 526 (1984).  Such conduct is not always predictable.  Officers Madjemite and Christiansen were doing their jobs when Clark abruptly broke away.  Officer Christiansen was responsible for stopping the assault.  While Torres' claim that Officer Summers was negligent in failing to lock the door to administrative segregation is not untrue, mere negligence or neglect simply does not constitute deliberate indifference.  *Fielder v. Bosshard*, 590 F.2d 105, 107 (5th Cir. 1979).   The complete lack of evidence to support a theory that any defendant knew or had reason to know that inmate Clark posed a substantial risk of serious harm to Torres, or that officials were deliberately indifferent to such risk, precludes an Eighth Amendment claim of failure to protect.

Moreover, violations of prison policy and/or  procedures, such as failing to lock a door to ad-seg,  are not federal issues and are thus not subject to review in a federal forum; there must be an independent, constitutional basis for the relief sought. There is no constitutional basis for the relief sought by Torres in this case.  *Jackson v. Cain*, 864 F.2d 1235, 1251 (5th Cir. 1989); *see also Green v. McKaskle*, 788 F.2d 1116 (5th Cir. 1986).  Torres fails to show that any defendant was deliberately indifferent to his safety needs in violation of the Eighth Amendment and fails to overcome the defense of qualified immunity on his failure-to-protect claim.

V.   <u>**Conclusion**</u>

Torres has failed to rebut the defendants' affirmative defense of qualified immunity by showing the existence of a disputed fact issue material to determining whether the defendants were deliberately indifferent to his safety.  *See Pierce v. Smith*, 117 F.3d 866, 871-72 (5th Cir. 1997).  The defendants' motion for summary judgment is **GRANTED** and this action is **DISMISSED** with prejudice as frivolous and for failure to state a claim for which relief can be granted.

All pending motions are **DENIED** as moot.

**The Clerk shall provide a copy of this order by regular mail, facsimile transmission, or e-mail to: (1) the TDCJ - Office of the General Counsel, P.O. Box 13084, Austin, Texas, 78711, Fax Number (512) 936-2159; (2) the Inmate Trust Fund, P.O. Box 629, Huntsville, Texas 77342-0629, fax: 936-437-4793; and (3) the District Clerk for the Eastern District of Texas, Tyler Division, 211 West Ferguson, Tyler, Texas, 75702, Attention: Manager of the Three-Strikes List.**

SIGNED at Houston, Texas this 25th day of July, 2011.

_____
Kenneth M. Hoyt
United States District Judge